**CONTINUATION OF APPLICATION FOR SEARCH WARRANT**

I, TFO Matthew Warzywak, being first duly sworn, hereby depose and state as follows:

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the following electronic devices and its contents: a black I-phone 12 (hereinafter the **SUBJECT DEVICE**). This item was seized from Ronnie OLIVER's vehicle at the Apex One Motel (15749 Old U.S. 27, Lansing, MI 48906). More specifically, the **SUBJECT DEVICE** was located on the front passenger side floorboard. The device is currently in the custody of the Tri-County Metro Narcotics Team in Lansing, Michigan.

2. I am a Task Force Officer with the Drug Enforcement Administration ("DEA"), a position I have held since September of 2019. I'm also a Detective/Sergeant with the Michigan State Police (MSP) and have been employed with the MSP since 2004. I am currently assigned to a multi-jurisdictional drug task force known as the Tri-County Metro Narcotics Team (TCM), which is part of the First District of the MSP. I was previously assigned to the Jackson Narcotics Enforcement Team (JNET) from 2008 through 2010.

3. I have attended schools, seminars, and lectures on drug enforcement. These drug related schools include Basic Narcotics School, Advanced Narcotics School, Desert Snow Drug Interdiction, DEA/MSP Indoor Cannabis Grow School, Methamphetamine Basic Clan Lab Safety Course, Raid Entry School, SIRCHIE Instructors Course Nark II Progressive System of Drug Identification and the Drug

Interdiction Assistance Program (DIAP). I also facilitated the MSP Undercover Narcotics School and Surveillance School from 2017 to 2018. I have participated in numerous narcotics investigations using a variety of methods including but not limited to visual surveillance, general questioning of witnesses, the use of search warrants, confidential informants, and undercover officers. My responsibilities include the investigation of criminal violations of Titles 18 and 21 of the United States Code.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested search warrant of the **SUBJECT DEVICE** and does not set forth all my knowledge about this matter.

5. The applied-for warrant would authorize the forensic examination of the **SUBJECT DEVICE** for the purpose of identifying electronically stored data particularly described in Attachment B.

## Probable Cause

6. On June 9, 2021, a TCM undercover officer (UC) contacted RONNIE OLIVER at telephone number 517-***-6697 to arrange the purchase of heroin. The UC met with RONNIE OLIVER in the city of Lansing and exchanged pre-recorded buy funds for approximately 29.7 grams of suspected heroin. The UC positively identified RONNIE OLIVER as compared to his Michigan Secretary of State image. The grey substance purchased by the UC was field tested utilizing the Thermo Scientific Scanner which indicated positively for heroin with fentanyl compound or methamphetamine.

7. On June 15, 2021, the UC contacted RONNIE OLIVER at telephone number 517-***-6697 to arrange the purchase of heroin. The UC proceeded to meet with RONNIE OLIVER in the city of Lansing and exchange pre-recorded buy funds for approximately 30.73 grams of suspected heroin. The grey substance purchased by the UC was field tested utilizing the Thermo Scientific Scanner which indicated positively for fentanyl compound or methamphetamine.

8. On June 21, 2021, the UC contacted RONNIE OLIVER at telephone number 517-***-6697 to arrange the purchase of heroin. The UC proceeded to meet with RONNIE OLIVER in the city of Lansing and exchange pre-recorded buy funds for approximately 58.11 grams of suspected heroin. The tan chunky substance purchased by the UC was submitted to the Michigan State Police laboratory on June 22, 2021, which showed the substance contained fentanyl and weighed 56.11 grams.

9. RONNIE OLIVER has prior felony convictions for felony-controlled substance – possess (cocaine, heroin or another narcotic) less than 25 grams, felony-controlled substance – delivery/manufacture marijuana, felony-controlled substance – delivery/manufacture ecstasy/MDMA, FIP, Felony firearm, felony-controlled substance – deliver/manufacture (cocaine, heroin or another narcotic) less than 25 grams.

10. On June 23, 2021, investigators located RONNIE OLIVER's vehicle (GMC Sierra) at the Apex One Motel (15749 Old U.S. 27 Lansing, MI) and took RONNIE OLIVER into custody once he entered his vehicle for distribution of

fentanyl. Investigators conducted a probable cause search of the GMC Sierra and located the **SUBJECT DEVICE** on the front passenger floorboard of the vehicle.

11. I know through training and experience that drug dealers utilize multiple cellular telephones to communicate and set up controlled substance transactions. I also know through training and experience that drug dealers store data utilizing various method such as cellular telephones. It is further believed based on the above that pertinent information can be extracted from the device seized.

12. The **SUBJECT DEVICE** is currently in storage at the TCM office in Lansing, Michigan. The **SUBJECT DEVICE** has been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the **SUBJECT DEVICE** first came into the possession of the TCM team.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

13. Based upon my training, experience, and participation in drug investigations and financial investigations relating to drug investigations, I am aware of the following:

   a. Drug traffickers often keep names, aliases, and/or contact information of suppliers, purchasers, and others involved in drug trafficking in their devices.

   b. Drug traffickers sometimes use electronic messaging or messaging apps, in addition to MMS, SMS text messages, and voice call, to communicate with suppliers, purchasers, and others involved in drug trafficking on

their devices.

    b.  Drug traffickers often take pictures or videos of their drug trafficking associates, drugs, money and/or firearms, which they store on their devices.

    d.  Global Position System (GPS) data on phones may show the location of a drug trafficker at a given time, which may provide corroborating evidence of a drug delivery or other instance of drug trafficking.

    e.  It is common for persons involved in drug trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and or expenditure of drug proceeds.  This evidence includes currency, financial instruments, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, and records concerning storage lockers.  These and other items are maintained by the drug traffickers within their residences or other locations over which they maintain dominion and control.

    f.  That when drug traffickers amass large proceeds from the sale of controlled substances that the drug traffickers attempt to legitimize these profits through money laundering activities.  To accomplish these goals, drug traffickers utilize but are not limited to, domestic and international banks and their attendant services, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, storage lockers, safe deposit boxes and otherwise legitimate businesses that generate large quantities of currency.

      g.    User attribution data and usernames, passwords, documents, and browsing history can provide evidence that the device is being used by a drug trafficker and can provide other useful evidence to the drug investigation; and

      h.    Drug traffickers often use the internet to look up various information to support their drug trafficking activities.

14.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

15.    Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **SUBJECT DEVICE** was used, the purpose of their use, who used them, and when they were used. There is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT DEVICE** because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the

search for "indicia of occupancy" while executing a search warrant at a residence.

 c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

 d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

 e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

16. Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the

entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

17.     I respectfully submit that there is probable cause to believe that RONNIE OLIVER was engaged in the distribution of controlled substances, in violation of 21 U.S.C § 841(a)(1). I further submit that there is probable cause to believe that evidence of this offense will be found on the SUBJECT DEVICE.

18.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT DEVICE described in Attachment A to seek the items described in Attachment B.